# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

TERESA L.,[1]

       Plaintiff,

v.

ANDREW M. SAUL,[2]
Commissioner of Social Security,

       Defendant.

CIVIL ACTION

No. 19-1135-JWL

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) evaluation of Dr. Smith's medical opinion, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING this case for further proceedings.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.
[2] On June 17, 2019, Andrew M. Saul was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

## I. Background

Plaintiff filed an application for DIB on December 16, 2014. (R. 15, 211). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erroneously failed to include a mental limitation which would account for Dr. Smith's opinion of a minimal ability to tolerate stress in the residual functional capacity (RFC) she assessed. (Pl. Br. 13) (citing R. 238-39).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the

Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II. Discussion

Plaintiff points out that the ALJ accorded great weight to Dr. Smith's opinion but argues that she ignored Dr. Smith's opinion that Plaintiff has a minimal ability to tolerate stress and did not explain why she rejected that opinion. (Pl. Br. 7). She argues that an ALJ cannot "endorse an opinion, claim it is consistent with the examination and rest of the record, and then not explain why she excluded material limitations in that opinion from the RFC." Id. at 9 (citing Soc. Sec. Ruling (SSR) 96-8p 1996 WL 374184 at *7).

The Commissioner argues that, read in context, Dr. Smith's opinion "attributed Plaintiff's minimal ability to tolerate stress to her temper and irritability," and apparently

4

"believed that the stress that Plaintiff had a 'minimal ability to tolerate' was due in large part to her difficulty interacting with others." (Comm'r Br. 8). He argues that the ALJ "addressed Dr. Smith's opinion regarding Plaintiff's difficulty with tolerating stress by translating his opinion that she had 'minimal ability' to interact with others into vocationally-relevant terms." Id. (citing R. 23, 27). Finally, the Commissioner argues, "The ALJ's interpretation of Dr. Smith's opinion was bolstered by the opinions of State agency psychologists Drs. McMaster and Blum, both of whom reviewed Dr. Smith's examination findings and opinion when they rendered their own opinions," and neither of whom "opined that Plaintiff required any additional limitations to address her stress tolerance." Id. at 9. He argues that

> Plaintiff has sought to create an inconsistency between Dr. Smith's opinion and the ALJ's RFC assessment. But "[the Court's] deferential standard of review precludes [it] from labeling findings as inconsistent if they can be harmonized." Chismarich v. Berryhill, 888 F.3d 978, 980 (8th Cir. 2018). Here, Dr. Smith's findings, which attributed Plaintiff's difficulty tolerating stress to social interactions, can be harmonized with the ALJ's RFC assessment, which limited Plaintiff's social interactions.

Id.

In her Reply Brief, Plaintiff argues the Commissioner "convolutes the ability to interact with others with the ability to handle workplace stress," and quotes SSR 85-15 for the proposition that "the reaction to the demands of work (stress) is highly individualized, and … Any impairment-related limitations created by an individual's response to demands of work, … must be reflected in the RFC assessment." (Reply 1-2) (quoting 1985 WL 56857 at * 6 (SSA Jan. 1, 1985)). Finally, she argues that the Commissioner's rationale is a post-hoc rationalization of the ALJ's decision and the court

5

should not weigh the evidence in the first instance and provide such a post-hoc rationalization for the ALJ's decision. (Reply 3).

### A. The ALJ's Findings

In her step three analysis, the ALJ explained her evaluation of the Paragraph B criteria of the Listings of mental impairments. (R .21-22). She found Plaintiff has moderate limitations in the broad functional areas of understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. Id. at 22. She found Plaintiff has "no limitations" in the fourth area, adapting or managing oneself. Id.

As the parties' Briefs suggest, the ALJ also explained her evaluation of the opinions of the state agency psychological consultants, Dr. Blum and Dr. McMaster, and of the psychologist who examined Plaintiff and prepared a report of his findings, Dr. Smith.

> In making this determination, the undersigned considered the opinion of state agency psychologists Robert Blum, Ph.D. who opined that the claimant could understand, remember and carry out three to four step instructions; and maintain frequent contact with supervisors and occasional contact with coworkers and the general public (Exhibit B5A/16) [(R. 126)]. M. Rosalie McMaster, Ph.D. provided a commensurate opinion at the initial level (Exhibit B3A/16) [(R. 107)]. These opinions are internally consistent and consistent with the evidence as a whole. As they are well supported, the opinions of Dr. Blum and Dr. McMaster are afforded partial weight in the area of social functioning. However, the claimant is further reduced to only simple work based on the results of the consultative examination completed by Dr. Smith (Exhibit B15F), and to account for deficits in concentration, persistence and pace due to both mental symptoms and pain.
>
> In reaching this conclusion, the undersigned has considered the written opinion of Gregory Smith, Ph.D., who opined that the claimant had the ability to carry out intermediate level instructions as evidence[d] by her

6

problems with attention and concentration. In addition, Dr. Smith opined that the claimant had minimal ability to maintain appropriate relations with coworkers, supervisors, and the public (Exhibit B15F/3) [(R. 611)].

However, Dr. Smith did not offer specific functional limitations as to the claimant's social limitations. The undersigned has converted these limitations to mean only frequent interaction with supervisors, and occasional interaction with the general public and coworkers. The claimant is further restricted to only simple tasks given the claimant's deficits in memory and attention. The opinion is internally consistent and consistent with the evidence as a whole. As it is well supported by his consultative evaluation, the opinion of Dr. Smith has been afforded great weight

(R. 26-27).

### B. <u>Standard to Evaluate Medical Opinions</u>

For claims filed before March 17, 2017, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources[3] that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2). Such opinions may not be ignored and, in a case such as this, where there is no treating source opinion, <u>all</u> medical opinions will be evaluated by the Commissioner in accordance with factors

---

[3]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. <u>Id.</u>

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. <u>Id.</u>

7

contained in the regulations.  Id. § 404.1527(c); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2019).  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)). Opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).  After considering the factors, the ALJ must give reasons in the decision for the weight he gives the medical opinions.  Watkins, 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### C. Analysis

As Plaintiff suggests, Dr. Smith explained his evaluation of Plaintiff's work-related mental abilities:

> ABILITY TO SUSTAIN WORK-RELATED SKILLS: [Plaintiff] has the ability to carry out intermediate level, as evidenced by her problems with attention and concentration. She has minimal ability to tolerate stress, as evidenced by her temper and irritability. Because of her temper, [Plaintiff] likely has minimal ability to maintain appropriate reactions with coworkers and supervisors. Her ability to maintain appropriate relations with the public is minimal, as evidenced by her temper and withdrawal from friends. She should be able to manage benefits.

(R. 611). Moreover, Plaintiff correctly suggests Dr. Smith's evaluation expresses three limitations in Plaintiff's mental abilities: (1) to handle only intermediate level tasks, (2) minimal ability to tolerate stress, and (3) minimal ability to interact with others—coworkers, supervisors, and the public. Finally, as Plaintiff also points out and the Commissioner agrees, the ALJ converted Dr. Smith's "limitations to mean only frequent interaction with supervisors, and occasional interaction with the general public and coworkers, [and] further restricted [her] to only simple tasks." (R. 27).

Plaintiff argues this cannot encompass all aspects of a minimal ability to tolerate stress whereas the Commissioner argues it does because it can be harmonized by understanding that Plaintiff's minimal ability to tolerate stress was due to her temper and irritability and was focused on her difficulty interacting with others. Both parties' rationale are reasonable and are logically supportable by the record evidence. Therefore, if one of those rationale is the ALJ's decision, the court must accept it and reject the other. The court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the

9

matter been before it de novo." Lax, 489 F.3d at 1084; see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

However, neither of those rationale is the ALJ's. The ALJ restricted Plaintiff to simple tasks because Dr. Smith found deficits in memory. But she found "Dr. Smith did not offer specific functional limitations as to the claimant's social limitations [and] converted these limitations to mean only frequent interaction with supervisors, and occasional interaction with the general public and coworkers." (R. 27) (emphasis added). She afforded Dr. Smith's opinion great weight, but she said nothing regarding Dr. Smith's opinion that Plaintiff "has minimal ability to tolerate stress, as evidenced by her temper and irritability." (R. 611).

SSR 85-15 addresses application of the Medical-Vocational Guidelines as a framework for evaluation of a claimant who has only non-exertional impairments such as mental impairments. SSR 85-15, 1985 WL 56857 (SSA Jan. 1, 1985). As Plaintiff's Brief suggests, that Ruling explains that "[s]ince mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings. Determining whether these individuals will be able to adapt to the demands or 'stress' of the workplace is often extremely difficult." Id. 1985 WL 56857 at *5 (emphases added). This Ruling suggest that stress is not merely a problem with social functioning but with adapting or accommodating to the demands of work and work-like settings. Thus, when Dr. Smith opined that Plaintiff's "temper and irritability" demonstrated her "minimal

10

ability to tolerate stress," it begged the question of Plaintiff's adaptability to the demands of work. But, the ALJ did not address this issue.

Social functioning—or the broad mental functional area of interacting with others—is certainly implicated in Dr. Smith's opinion that Plaintiff has a "minimal ability to tolerate stress," due to "temper and irritability," but that opinion also implicates the broad mental functional area of adapting or managing oneself, because stress due to irritability may make one irritable with workplace or work situation changes. The ALJ found Plaintiff has <u>no</u> limitation in that functional area but did not explain how she reached that conclusion despite the implications of Dr. Smith's opinion to which she afforded great weight. The Commissioner ignores this tension and argues that the ALJ's finding is "bolstered by the opinions of" Dr. McMaster and Dr. Blum (who also opined Plaintiff has no adaptation limitations, <u>see</u> R. 107, 126). While that may be the case, the court may not decide whether the evidence supports that finding because the ALJ did not make that finding nor rely on that rationale. Where the Commissioner points to record evidence supporting a rationale relied upon by the ALJ, even if that evidence was not specifically mentioned in the final decision, that is proper argument in support of the final decision. However, if the Commissioner points to record evidence (even evidence which was discussed in the decision) and attempts to provide an alternative rationale in support of the decision, that alternative rationale is merely post-hoc rationalization which may not be relied upon by the court to affirm the decision. <u>Buchan v. Astrue</u>, Civ. A. No. 10-4081-JWL, 2011 WL 3714472, *4-5 (D. Kan. Aug. 24, 2011). Here, the ALJ discussed Dr. McMaster's and Dr. Blum's opinions and accorded them partial weight. However,

she did not use the rationale presented in the Commissioner's Brief to discount Dr. Smith's suggestion of decreased ability to adapt to workplace or work situation stresses. Therefore, the court finds that is a post-hoc rationalization upon which it may not rely. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005); Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).

The Commissioner's appeal to Chismarich, 888 F.3d at 980 does not require a different result. Chismarich is an opinion of the Eighth Circuit and therefore not binding on this court. Moreover, in order to harmonize the ALJ's opinion with the evidence in this case, the court would have to weigh the evidence in the first instance and provide a post-hoc rationalization for the Commissioner's final decision, both of which are contrary to binding precedent as discussed herein.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING this case for further proceedings consistent herewith.

Dated April 1, 2020, at Kansas City, Kansas.

                                      s:/ John W. Lungstrum
                                      **John W. Lungstrum**
                                      **United States District Judge**